```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
RUTH DUDELSON,                                               :
                                                             :
                    Plaintiff,                               :   03 Civ. 7734 (RCC) (FM)
                                                             :
        -against-                                            :   MEMORANDUM & ORDER
                                                             :
JO ANNE BARNHART,                                            :
Commissioner of Social Security,                             :
                                                             :
                    Defendant.                               :
                                                             :
-------------------------------------------------------------X
```

**RICHARD CONWAY CASEY, United States District Court Judge:**

On October 1, 2003, Ruth Dudelson ("Dudelson") brought this action against the Commissioner ("Commissioner") of the Social Security Administration ("SSA") seeking review of the Commissioner's determination that Dudelson is not disabled and the denial of her application for Social Security disability benefits for the period of March 1, 1993 through March 31, 1997. On May 10, 2005, Magistrate Judge Frank Maas issued a Report and Recommendation ("Report"), recommending that the Court remand the case to the Commissioner for further proceedings on Dudelson's claims of mental impairment. The Commissioner objects to the recommendation for remand. For the foregoing reasons, the Commissioner's objections are denied and the Court adopts the Magistrate's Report.

**I.    BACKGROUND**

The Court briefly states the relevant facts here. For a more complete statement, see Magistrate Judge Maas's Report at 2-12.

On August 31, 2000, Dudelson applied for Social Security disability benefits for the period of March 1, 1993 through March 31, 1997. Her application was denied on April 20, 2001, and again upon reconsideration on May 3, 2001. In July 2001, Dudelson requested a de novo hearing before an administrative law judge ("ALJ"), which was held on July 17, 2002 before ALJ Katherine C. Edgell. Dudelson appeared at the hearing with her counsel, George Silver, Esq.

At the hearing, Dudelson testified that she had not worked for nine years prior to the hearing. (Administrative R. at 26.) When she was employed, Dudelson, who holds a bachelor of arts in business management, held positions as a technical writer, tutor, researcher, and administrative assistant. (Id. at 26-27.) She also obtained her real estate license in May 1993.

1

(Id.)  Dudelson had surgery in July of 1993, and stopped working that fall.  (Id. at 27-28.)  Thereafter, her only sources of income were public assistance and later SSI benefits.  (Id. at 26.)

Dudelson testified that her complaints were "primarily, pain, back pain, pelvic and abdominal pain, a problem with [her] right ankle at the time, pain in [her] knees, migraines, severe migraines, chronic respiratory infections, and asthma."  (Id. at 37.)  She also testified that she had been diagnosed with scoliosis and polycycstic ovarian disease, which had required her to undergo multiple surgeries to remove "adhesions."  (Id. at 39-40.)  Dudelson explained that her last surgery in 1993 to correct an inguinal hernia resulted in a "lump in her groin" that gave her constant pain and made it "very difficult for [her] to function."  (Id. at 37, 38.)  Dudelson also tore a ligament in her ankle in 1987 and again in 1994, which left her "pretty much confined to the home" and unable to work throughout 1994.  (Id. at 46.)  She was evicted from her apartment and declared bankruptcy in 1997.  (Id. at 48).

In 1997, Dudelson began living in a homeless shelter.  (Id. at 48.)  While in the shelter, she saw a psychiatrist because she was withdrawn, depressed, and had "occasional outbursts." (Id.)  Dudelson further testified that "over the course of '93 to '97", she had been treated for depression and anxiety and had taken medication for those symptoms in 1995.  (Id. at 43.)  She testified that she sought psychiatric treatment in the late 1980s and early 1990s.  (Id. at 43, 44.)  Dudelson was seeing a psychiatrist at the time of the hearing.  She did not receive psychiatric treatment during the period for which she is seeking disability benefits.  (Id. at 44.)

To support her claims, Dudelson presented medical documentation consisting of the reports and diagnoses of various doctors who have treated her.  Dudelson consulted four doctors, as well as her primary care physician, regarding her abdominal pain.  Dudelson's primary care physician, Dr. Stephen Siegel, completed a Medical Assessment of Employability form in April, 1996 in which he indicated that Dudelson was "employable with limitations."  (Id. at 341.)  Dr. Seigel noted that Dudelson was not able to bend or carry heavy objects, but could walk, carry light objects, and stand for short periods of time.  (Id.)  Dr. Seigel added that Dudelson was "sensitive to environmental allergens such as dust, heat, [and] humidity."  (Id.)  In 1997, Dr. Siegel prepared a "To Whom it May Concern" letter in which he stated that Dudelson was unable to work from January 26, 1997 until February 19, 1997 due to "worsening migraine headaches as well as asthmatic bronchitis."  (Id. at 339.)

Dudelson also submitted a letter written by Dr. Siegel in 1987 in which he indicated that Dudelson was "severely depressed" and "in a tense emotional state requiring anti-anxiety medication."  (Id. at 354.)  Dr. Timothy Dutta, who examined Dudelson at the New York Hospital-Cornell Medical Center in January 2000, indicated that Dudelson had been referred to the center because her gynecologist was concerned that she might be suffering from depression.  (Id. at 308.)  A report dated October 26, 2000 by Dr. Harry Wakslak, a clinical psychologist, stated that Dudelson had a "significant" psychiatric history and was taking anti-depressants Wellbutrin and Trazodone at the time.  (Id. at 230.)  A report by Dr. Craig Serin of the Jacobi Medical Center in 2001 stated that Dudelson "was being followed by Jacobi psychiatry" and referred to Ms. Megan McGhee, MSW.  (Id. at 371.)  Ms. McGhee's March 16, 2000 Clinical

2

Evaluation stated that Dudelson had reported "feeling depressed for more than 10 years" during which she displayed symptoms such as disturbed sleep, decreased energy and motivation, and feelings of hopelessness. (Id. at 218.) Dr. Matthew Love of the Jacobi Medical Center diagnosed Dudelson as suffering from depression on October 2, 2000. (Id. at 260.) In another report dated October 4, 2000, Ms. McGhee diagnosed Dudelson with suffering from Bipolar Disorder and opined that Dudelson was "unable to function in a work environment due to her severe depression and mania." (Id. at 267.) In addition, an Internal Medicine Evaluation prepared by Dr. Steven Rocker of HS Systems, Inc. on October 26, 2000 found Dudelson to have a "history of depression." (Id. at 237.)

The ALJ concluded that Dudelson's impairments did not meet the criteria of any of the listed impairments promulgated by the SSA. (Id. at 13.) The ALJ also found that during the relevant time period, Dudelson retained the residual functional capacity to sit for 6 hours in an 8 hour work day, stand and walk for 2 hours in an 8 hour work day, and lift and carry objects weighing between 5-10 pounds. (Id. at 16.) Based on these findings, the ALJ determined that Dudelson was able to perform her past sedentary work as a technical writer during the period for which she sought benefits and, therefore, was not disabled within the meaning of the Social Security Act. (Id.) In the course of her decision, the ALJ made no mention of Dudelson's claim that she suffered from depression, nor did the ALJ mention any of the records which listed a mental condition as a diagnosis. (See id. at 8-18.)

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied further review on July 19, 2003. On October 1, 2003, Dudelson filed an action with this Court seeking reversal of the Commissioner's decision on the grounds that (1) the Commissioner's finding that she has sufficient residual functional capacity to perform her previous work is not supported by substantial evidence because the ALJ failed to accord proper weight to the opinions of her treating physicians, her non-exertional impairments, and the credibility of her testimony and (2) the ALJ erroneously failed to consider her mental condition. As to the second claim, Dudelson contends that the case should be remanded for the purpose of calculating benefits or, in the alternative, remanded so that the Commissioner can consider new evidence submitted to the Court by Dudelson after her hearing.

In his Report, Magistrate Judge Maas found that the ALJ properly accorded sufficient weight to the opinions of Dudelson's treating physicians, evidence of her non-exertional impairments, and her credibility. (Report at 19, 23, 26.) He recommended, however, that Dudelson's case be remanded back to the Commissioner for further proceedings regarding Dudelson's claims of mental impairment because the ALJ did not properly develop the record regarding such claims. (Report at 28.) Magistrate Maas also recommended that the Commissioner's cross-motion for an order affirming the decision of the Commissioner be denied. (Id. at 32.) The Commissioner objects to a remand on the grounds that the Commissioner had no duty to consider Dudelson's mental condition and that Dudelson's proffered evidence does not warrant it. (Def.'s Objections at 2-3, 13.)

## II. DISCUSSION

3

### A. Determining Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). The SSA has promulgated a five-step procedure for evaluating disability claims. See C.F.R. § 404. 1520. The Second Circuit has interpreted the procedure as follows:

> First, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities. If the claimant suffers from such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment . . . listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work that the claimant is able to perform.

Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (citing Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999)). If the claimant satisfies his burden of proving the requirements of the first four steps, the burden then shifts to the Commissioner to prove that the claimant is capable of working as provided in the fifth step. Perez v. Chater, 77 F. 3d 41, 46 (2d Cir. 1996). In making a determination, the ALJ must consider all the evidence in the case record. 20 C.F.R. § 404.1520(a)(3).

### B. Judicial Review

The reviewing court does not determine de novo whether a claimant is disabled. Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). A district court may set aside the decision of the Commissioner only where it is based on a legal error or is not supported by substantial evidence. 42 U.S.C. § 405(g); Vasquez v. Barnhart, No. 04 Civ. 7409, 2005 U.S. Dist. LEXIS 22243 at *9 (S.D.N.Y. Sept. 29, 2005). The Commissioner's findings of fact, as stated by the ALJ, are conclusive provided they are supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971).

Due to the "non-adversarial nature" of a disability benefits hearing, the ALJ has an affirmative obligation to investigate and develop the record, as well as to develop the arguments both for and against the granting of benefits. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir 1996); Echevarria v. Sec'y of Health & Human Serv., 685 F.2d 751, 755 (2d Cir 1982); Vasquez, 2005 U.S. Dist. LEXIS at *10. The regulations explain, "before we make a determination that you are

not disabled, we will develop your complete medical history." 20 C.F.R. §404.1512(d). Furthermore, "when the evidence we receive from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled . . . we will first recontact your treating physician . . . or other medical source to determine whether the additional information we need is readily available." 20 C.F.R. §404.1512(e); see also Schaal, 134 F.3d at 505. Where there are gaps in the administrative record, the reviewing court may remand the case for further development of the evidence, if appropriate. Rosa, 168 F.3d at 82-83.

### C. The ALJ Did Not Consider Dudelson's Mental Condition

In her decision, the ALJ disregarded Dudelson's claim of depression. There is not a single reference in the ALJ's opinion to Dudelson's depression or psychiatric history. The ALJ failed to mention Dudelson's testimony at the hearing that she was taking anti-depression and anti-anxiety medication during the relevant time period and that she had received psychiatric treatment both before and after the relevant time period. In addition, the ALJ did not attempt to substantiate Dudelson's claim of depression by developing the record through the production of additional documentary evidence. A remand is warranted if the ALJ ignored parts of the record that are probative of the claimant's disability claim. Sutherland v. Barnhart, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004).

The record in Dudelson's case contains documentation to support her claim that she suffered from a mental illness during the relevant time period. For example, in a letter dated June 1987, Dr. Seigel stated that Dudelson was "severely depressed" and required anti-anxiety medication. (Administrative R. at 354.) In a report prepared on October 4, 2000, Ms. McGhee diagnosed Dudelson as suffering from "Bi-Polar Disorder" and opined that Dudelson was "unable to function in a work environment due to her severe depression and mania." (Id. at 267.) Similarly, in another report, dated October 26, 2000, Dr. Harry Wakslak, a clinical psychologist, stated that Dudelson had a "significant" psychiatric history and noted that she was then taking Wellbutrin and Trazodone. (Id. at 230.) Such documentation triggered an affirmative duty on the part of the ALJ to develop the record. Schaal, 134 F.3d at 505; ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the health care provider] sua sponte."). Although most of the documents in the record relate to psychiatric treatment occurring after the relevant period, the ALJ had a duty to develop the record as some of the documents support Dudelson's claim.

> [E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date and may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations . . . .

Lisa v. Sec'y of Health & Human Serv., 940 F.2d 40, 44 (2d Cir. 1991).

In addition to the written documents Dudelson provided, she also testified that she had been "treated for depression and anxiety with Elavil" during the relevant time period.

5

(Administrative R. at 43.) There is no documentation regarding such medication, and Dr. Seigel's treatment records do not reference any mental conditions. (Def.'s Obj. at 4, 7.) However, this does not negate the ALJ's duty to develop the record. Even if the clinical findings are inadequate, the ALJ still has a duty to seek additional information from the treating physician sua sponte. 20 C.F.R. § 404.1512(e); Donato v. Sec'y of Dep't of Health & Human Servs., 721 F.2d 414, 419 (2d Cir.1983) (finding ALJ erred by disregarding doctor's diagnosis of disability because medical reports were not submitted and noting ALJ had duty to obtain records and, if necessary, elicit further testimony).

The ALJ's decision failed to comply with the Commissioner's regulations requiring that the record be fully developed with respect to Dudelson's claim of mental impairment. Therefore, the Court adopts Magistrate Judge Maas' recommendation that the case be remanded for further proceedings with respect to Dudelson's claim of mental impairment.

### D. New Evidence

Dudelson seeks to bring before the Commissioner a letter, dated May 21, 2004, from her treating psychologist, Maureen McSweeney, Ph.D. In this letter, Dr. McSweeney explains that she has been treating Dudelson since December 19, 2003 and had diagnosed Dudelson with Bipolar I disorder, panic disorder, and chronic pain. (McSweeney Letter, at Dudelson Decl. Ex. 1.) Dr. Sweeney opined that "it would be considered impossible that Ms. Dudelson would suddenly develop a bipolar disorder in her 40's" and that she "[m]ost likely . . . has had bipolar disorder since childhood." (Id.)

Under 42 U.S.C. § 405(g), a court may order that additional evidence be considered by the Commissioner on remand if the claimant can show that (1) the evidence is new and not merely cumulative of what is already in the record; (2) the evidence is material; that is, both probative and relevant to the claimant's condition during the time period for which benefits were denied; and (3) there was good cause for the claimant's failure to present the evidence earlier. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988); see also Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) (interpreting materiality to require "a reasonable probability that the new evidence would have influenced the [Commissioner] to decide claimant's application differently").

This letter did not exist at the time of Dudelson's hearing; therefore, it is considered "new" evidence. Pollard, 377 F.3d at 193. The letter is not "merely cumulative" of information already in the record. Although evidence in the record shows that Ms. McGee had diagnosed Dudelson with Bipolar disorder in 2000, Ms. McGee's diagnosis was labeled as "Bi-Polar Disorder-Episodes of Mania and Depression 296.36." (Administrative R. at 267.) Dr. McSweeney gave Dudelson a "primary Axis diagnosis of 296.40, which is Bipolar I disorder"

6

and a "secondary diagnosis of 300.01, panic disorder." (McSweeney Letter).[1]

Dr. McSweeney's contention that Dudelson could not suddenly develop a bipolar disorder and that Dudelson probably had such a disorder since childhood indicates that Dudelson's mental condition existed during the relevant time period for which she is seeking benefits. There is no evidence in the record that Dudelson was being treated for a mental condition during the relevant period. "Just because [P]laintiff's disability went untreated does not mean [s]he was not disabled." Shaw v. Chater, 221 F.3d 126, 133 (2d Cir. 2000). In addition, as Dr. McSweeney noted in her letter, it would be "considered impossible" that Dudelson suddenly developed a mental condition such as bipolar disorder. (McSweeney Letter); see also Arroyo v. Callahan, 973 F. Supp 397, 400 (S.D.N.Y. 1997) (remanding case to Commissioner because an ALJ cannot "assume" that a claimant suddenly developed a mental disorder); Charlemagne v. Schweiker, No. 81 Civ. 6420, 1984 WL 157, at *3 (S.D.N.Y. April 11, 1984) ("Unless schizophrenia is a condition which is likely to come and go, the only possible inference is that plaintiff suffered from this impairment during the intervening years."). Additionally, "[a] diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment." Dousewicz v. Harris, 646 F. 2d 771, 774 (2d Cir. 1981). As noted previously, subsequent evidence "is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date and may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations . . ." Lisa, 940 F.2d at 44.

The Commissioner objects to Dudelson's proffered evidence because Dr. McSweeney's diagnosis is not supported by any medical evidence. (Def.'s Obj. at 13). The lack of supporting medical evidence is not a valid reason to reject a retrospective diagnosis that may affect a claim of impairment. See Wenk v. Barnhart, 340 F. Supp. 2d 313, 322-23 (E.D.N.Y. 2004) (finding it would be unfair to discredit retrospective diagnosis solely on the basis that the medical records are no longer available); Kruppenbacher v. Apfel, No. 99 Civ. 3943 (WHP)(HBP), 2000 U.S. Dist. LEXIS 20919 (S.D.N.Y. August 25, 2000) (same); Agnese v. Chater, 934 F. Supp. 59, 62 (E.D.N.Y. 1996) (finding diagnosis based on claimant's symptoms and answers to physician's questions 15 years after the onset of a condition to be "medically acceptable" despite the absence of medical evidence from the relevant time period). In Dudelson's case, the letter from her treating psychologist which specifically references the life-long nature of her mental condition, coupled with the fact that the ALJ ignored Dudelson's claim of mental impairment, does create a "reasonable probability" that the new evidence would have influenced a different evaluation of Dudelson's claim. In sum, the Court finds Dr. McSweeney's letter offers new, material evidence regarding Dudelson's claim of mental impairment and therefore should be considered by the Commissioner on remand.

---

[1] In addition, Magistrate Judge Maas points out that the diagnosis code cited by Ms. McGee is incorrect so her diagnosis is not exactly clear. (Report at 10, n.6.)

## III. CONCLUSION

For the foregoing reasons, the Commissioner's objections are denied and the Court adopts the Magistrate's Report. The case is remanded to the Commissioner for further proceedings regarding Dudelson's claim of mental impairment in accordance with the Magistrate's Report and this memorandum.

**So Ordered:** New York, New York

January 18, 2006

Richard Conway Casey, U.S.D.J.